UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COMPLAINT OF BENJAMIN P. URBELIS
FOR EXONERATION FROM AND/OR                    CIVIL ACTION NO.
LIMITATION OF LIABILITY, CIVIL                 15-cv-12358-ADB
AND MARITIME

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this maritime action, Petitioner Benjamin P. Urbelis ("Mr. Urbelis") seeks limitation of

liability under 46 U.S.C. § 30501 *et seq*., in connection with a boating accident on the M/V

NAUT GUILTY (the "vessel"), a 29-foot power boat owned by Mr. Urbelis. Before the Court is

Claimant Nicole Berthiaume ("Ms. Berthiaume")'s Motion to Stay this action. [ECF No. 27].

Urbelis opposes the Motion [ECF No. 53], as do two additional Claimants, Volvo Penta of the

Americas, LLC [ECF No. 47], and Chaparral Boats, Inc. [ECF No. 52]. For the reasons set forth

in this Memorandum and Order, Ms. Berthiaume's Motion to Stay must be <u>DENIED</u>.

## I.    BACKGROUND

On May 30, 2015, the vessel departed Charlestown, Massachusetts and proceeded upon a

voyage into Boston Harbor. Aboard the vessel were Mr. Urbelis, Ms. Berthiaume, age 19, and a

number of other individuals. At approximately 7:00 p.m., the vessel was anchored off of

Spectacle Island. Several people, including Ms. Berthiaume, jumped off of the vessel to swim.

Subsequently, someone aboard the vessel started the engines. As Ms. Berthiaume attempted to

swim back to the boat, she was severely injured by the engine's moving propellers. Her injuries

included, among other things, the loss of her dominant right arm below the shoulder, and other

serious lacerations.

On June 17, 2015, Mr. Urbelis filed his Complaint in this action [ECF No. 1], in which he alleges that the incident and Ms. Berthiaume's resulting injuries were not caused or contributed to by any negligence or fault on the part of Mr. Urbelis, or any other person for whom Urbelis was responsible. Accordingly, Mr. Urbelis seeks exemption from, and/or limitation of liability for any damages or injuries resulting from the accident, pursuant to 46 U.S.C. § 30501 *et seq.*, which is commonly known as the Limitation of Liability Act (the "Act").

The purpose of the Act was "to encourage the development of American merchant shipping." Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 754 (2d Cir. 1988) (quoting Lake Tankers Corp. v. Henn, 354 U.S. 147, 150 (1957)). "The Limitation Act achieves this purpose by 'exempting innocent shipowners from liability, beyond the amount of their interest [in the vessel].'" In re Self, 172 F. Supp. 2d 813, 816 (W.D. La. 2001) (quoting Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. 104, 121 (1871)). Specifically, a vessel owner facing potential liability for a maritime accident may file a petition with the federal district court seeking exoneration from or limitation of liability. "Provided that the accident in question occurred without the vessel owner's 'privity or knowledge,' the Limitation Act limits the owner's liability to the value of his interest in the vessel and freight." In re Self, 172 F. Supp. 2d at 816 (citation omitted).[1]

---

[1] As used in the Limitation of Liability Act, "'privity" or "knowledge" means "a personal participation by the owner in some fault or act of negligence, or personal knowledge of matters likely to produce or contribute to the loss in the absence of adopting appropriate means of prevention." In re: Inland Marine Serv., Inc. v. Estates of Stack, No. 1:14-CV-833, 2016 WL 1614021, at *4 (S.D. Ohio Apr. 22, 2016) (quoting M/V Sunshine II v. Beavin, 808 F.2d 762, 763-64 (11th Cir. 1987)). The First Circuit has noted that the term "privity or knowledge" "usually implies some degree of culpable participation or neglected duty on the shipowner's part: that, for example, it committed a negligent act, or knew of an unseaworthy condition but failed to remedy it, or through the exercise of reasonable diligence could have prevented the commission of the act or the onset of the condition." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999).

After the shipowner files a petition to limit liability under the Act, the district court "is empowered to issue a restraining order or an injunction staying all other proceedings against the shipowner arising out of the same mishap." Complaint of Dammers, 836 F.2d at 755 (internal quotations, alterations, and citation omitted); see also Supp. R. Admiralty or Maritime Claims, Rule F(3).[2] The district court must also notify "all potential claimants to file their claims against the shipowner in the admiralty court within a specified time period." Complaint of Dammers, 836 F.2d at 755; see also Supp. R. Admiralty or Maritime Claims, Rule F(4). "Thereafter, in a proceeding known as a *concursus*, the district court, sitting in admiralty without a jury, determines 'whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed.'" Complaint of Dammers, 836 F.2d at 755 (quoting Universal Towing Co. v. Barrale, 595 F.2d 414, 417 (8th Cir. 1979) (alteration in original)). Courts have described this process as a "marshalling of assets," followed by a "distribution pro-rata of an inadequate fund amongst claimants, none of whom can be paid in full." Complaint of Dammers, 836 F.2d at 755 (quoting In re Moran Transp. Corp., 185 F.2d 386, 389 (2d Cir. 1950)).

Soon after Mr. Urbelis filed his Complaint in this action, the Court appointed an appraiser. [ECF No. 8]. After inspecting the vessel, the appraiser determined that the fair market value of the M/V NAUT GUILTY was $29,000, and the value of its pending freight was $0.00. [ECF No. 12]. In addition, on August 10, 2015, the Court issued an Order directing the issuance of notice to all potential claimants, and restraining all other lawsuits, actions, or proceedings against Mr. Urbelis, pending the resolution of this Limitation of Liability action. [ECF No. 15].

---

[2] The procedures governing an action under the Limitation of Liability Act are now codified in Rule F of the Supplemental Rules for Admiralty or Maritime Claims. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 448 (2001).

The Court's Order had the effect of staying a separate civil action that Ms. Berthiaume filed against Mr. Urbelis and other defendants in the Massachusetts Superior Court for Suffolk County on July 6, 2015 (the "state-court action"). <u>See</u> [ECF No. 53-1].[3]

In September 2015, Ms. Berthiaume filed an Answer to Mr. Urbelis' Complaint. [ECF No. 22]. In addition, two new Claimants – Volvo Penta of the Americas, LLC ("Volvo") and Chaparral Boats, Inc. ("Chaparral") came forward to file Claims and Answers. [ECF Nos. 20, 23]. Volvo manufactured the boat engines that were in use at the time of the accident, and Chaparral manufactured the vessel itself. Both Volvo and Chaparral deny any liability in connection with the incident, and each claims that it is entitled to complete indemnification from Urbelis and/or other parties, in the event a judgment is rendered against it. Further, both Chaparral and Volvo expressly request attorney's fees and costs as part of their indemnity claims. Alternatively, Volvo and Chaparral assert that they are entitled to contribution from Urbelis and/or other parties for any judgment collected from them.

After the deadline to file claims had passed, Ms. Berthiaume filed the instant Motion to Stay [ECF No. 27], in which she asks the Court to stay this action and allow her to try her claims against Mr. Urbelis and others before a jury in Massachusetts state court. Ms. Berthiaume contends that this Limitation of Liability action is essentially a single-claimant proceeding, as no other injured parties have come forward as claimants. She argues that in such a case, the Limitation of Liability action may be stayed until the state-court action is resolved, as long as Mr. Urbelis' right to pursue limitation of liability in federal court is preserved and protected by

---

[3] Ms. Berthiaume's complaint in the state-court action names Benjamin Urbelis, Alexander Williams, and John Does 1-10 as defendants. Mr. Williams was another individual aboard the vessel at the time of the incident. <u>See</u> <u>Berthiaume v. Urbelis</u>, No. 1584-cv-02025 (Mass. Super. Ct., Suffolk Cty).

stipulation. Specifically, Ms. Berthiaume has offered a number of stipulations that she claims

adequately protect Mr. Urbelis' rights. Those proposed stipulations are as follows:

> PROPOSED STIPULATION NO. 1: Berthiaume concedes and agrees that the United States District Court for the District of Massachusetts has exclusive jurisdiction over all limitation of liability issues which may arise from the boating accident which occurred on May 30, 2015 in Boston, Massachusetts, and that Urbelis is entitled to and has the right to litigate all issues relating to limitation of liability pursuant to the provisions of 46 U.S.C. § 30501, *et seq.*

> PROPOSED STIPULATION NO. 2: Berthiaume concedes and agrees to waive any claim(s) of *res judicata* pertaining to the issue of limitation of liability based on any judgment obtained in state court or other proceeding based on the boating accident which occurred on May 30, 2015 in Boston, Massachusetts.

> PROPOSED STIPULATION NO. 3: Berthiaume concedes and agrees that the United States District Court for the District of Massachusetts has exclusive jurisdiction to determine the value of the limitation fund, and so long as Berthiaume has had an opportunity to obtain an independent appraisal or related evaluation, Berthiaume will stipulate to the value of the limitation fund as determined by said court.

> PROPOSED STIPULATION NO. 4: Berthiaume concedes and agrees that should a judgment be obtained in any court or other proceeding and should the United States District Court for the District of Massachusetts determine that limitation of liability is appropriate, Berthiaume will seek only her respective *pro rata* share(s) of the limitation fund as measured by the respective proportions of any judgment(s) obtained in any state court or other proceeding.

> PROPOSED STIPULATION NO. 5: Berthiaume concedes and agrees that should a judgment be obtained on behalf of Berthiaume in any state court or other proceeding against Urbelis and/or other liability parties who may cross-claim or claim against Urbelis, and if the United States District Court for the District of Massachusetts determines that limitation of liability is appropriate and establishes a limitation fund, and said judgment(s) is/are in excess of the value of said limitation fund, in no event will Berthiaume seek to enforce said judgment(s) insofar as same may expose Urbelis to liability in excess of the limitation fund.

[ECF No. 28].

Mr. Urbelis, Volvo, and Chaparral all oppose Ms. Berthiaume's Motion to Stay. They argue that this is not a single-claimant proceeding, because Chaparral and Volvo have also filed claims against Urbelis, seeking indemnification and/or contribution. They contend that the presence of multiple claims gives rise to competing claims for the limitation fund. They further argue that Ms. Berthiaume's proposed stipulations do not adequately protect Mr. Urbelis' rights under the Act, because neither Chaparral nor Volvo has agreed to join in those stipulations.

## II.   DISCUSSION

Ms. Berthiaume's Motion to Stay forces the Court to "confront a recurring and inherent conflict in admiralty law: the apparently exclusive jurisdiction vested in admiralty courts by the Limitation of Liability Act versus the presumption in favor of jury trials and common law remedies embodied in the 'saving to suitors' clause of 28 U.S.C. § 1333." Complaint of Dammers, 836 F.2d at 754.

A case brought under the Act is an action instituted in admiralty, in which there is no right to a jury trial. See id. at 755. As the U.S. Supreme Court has observed, however, there is "some tension" between the Act and the "saving to suitors" clause found in 28 U.S.C. § 1333. Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 448 (2001). Section 1333 provides that the district courts "shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." 28 U.S.C. § 1333(1) (emphasis added). The "savings to suitors" clause has been interpreted to "preserve[] remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." Lewis, 531 U.S. at 445-46. Thus, while one statute "gives vessel owners the right to seek limitation of liability in federal court," the other "gives suitors the right to a choice of remedies." Id. at 448.

6

In <u>Lewis</u>, the Supreme Court acknowledged that in some cases, it is possible to avoid a conflict between the savings to suitors clause and the Limitation of Liability Act, as the district court has the "discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court." <u>Id.</u> at 454. The Court held, however, that a district court should not stay or dismiss a properly-instituted Limitation Act proceeding unless the vessel owner's right to pursue a limitation action will be "adequately protected." <u>Id.</u>

Generally, courts have identified two sets of circumstances warranting a stay or dismissal of the admiralty action in favor of a parallel proceeding in state court. <u>See</u> <u>Complaint of Dammers</u>, 836 F.2d at 755 <u>see also</u> <u>Lewis</u>, 531 U.S. at 451. "First, if the limitation fund . . . exceeds the aggregate of the claims to be made against it, a *concursus* is unnecessary and the district court must allow claimants to proceed in other forums." <u>Complaint of Dammers</u>, 836 F.2d 755. Where the value of the limitation fund exceeds the potential claims against the owner, the vessel owner "is not exposed to liability in excess of the limitation fund, and thus the vessel owner's rights under the Limitation Act are not implicated." <u>Beiswenger</u>, 86 F.3d at 1037. Here, however, Ms. Berthiaume's personal injury claims will almost certainly exceed the $29,000 limitation fund. Thus, this exception is not applicable, and Ms. Berthiaume has not argued otherwise.

Second, courts have stayed limitations actions "when a *single claimant* brings an action against the shipowner seeking damages in excess of the value of the vessel." <u>Gorman v. Cerasia</u>, 2 F.3d 519, 524 (3d Cir. 1993) (emphasis added). "Because a major purpose of the *concursus* proceeding is to resolve *competing* claims to the limitation fund, the single claimant may try liability and damages issues in another forum by filing stipulations that protect the shipowner's right to have the admiralty court ultimately adjudicate its claim to limited liability." <u>Beiswenger</u>

<u>Enterprises Corp.</u>, 86 F.3d at 1037 (11th Cir. 1996) (emphasis in original). "Specifically, the claimant must waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court, and concede the shipowner's right to litigate all issues relating to limitation in the federal limitation proceeding." <u>Gorman</u>, 2 F.3d at 524; <u>see also</u> <u>Lewis</u>, 531 U.S. at 453.

Although Ms. Berthiaume has offered such stipulations here, the other parties argue that her proposed stipulations are not sufficient, because this is not a single-claimant proceeding. In addition to Ms. Berthiaume's claims, Chaparral and Volvo have filed claims for indemnification or contribution in this limitation action, and they are likely to bring similar claims in the state-court action, assuming it proceeds.[4] Because neither Chaparral nor Volvo is willing to execute stipulations similar to those offered by Ms. Berthiaume, Mr. Urbelis argues that his right to pursue limitation of liability in federal court is not adequately protected.

This is a difficult issue. On the one hand, the Court is committed to preserving Ms. Berthiaume's choice of forum and her right to a jury trial to the maximum extent possible. On the other hand, the addition of Volvo and Chaparral's claims, together with their refusal to execute protective stipulations, and the relatively low dollar value of the limitation fund, make it impossible for the Court to allow the state-court action to proceed while simultaneously protecting all of Mr. Urbelis' rights under the Limitation of Liability Act.

After reviewing the relevant case law, the Court concludes that this is a multiple-claimant case, and that Ms. Berthiaume's stipulations do not adequately protect Mr. Urbelis' right to

---

[4] Although Ms. Berthiaume has not yet named Chaparral and Volvo in the state-court action, she represents that she intends to add them as defendants after the Court lifts its prior Order restraining all other suits. [ECF No. 28].

pursue limitation of liability in federal court. Consequently, the state-court action must remain stayed, and the federal action must be resolved first.

### A.  This case involves multiple claimants.

There appears to be a split in authority regarding whether co-defendants' indemnity and contribution claims against a vessel owner should be considered independent or derivative of the injured party's claims. A minority of Courts of Appeal have held that that such claims are merely derivative. As such, "[t]he injured party's claim and the third party's indemnity claim should be treated as a single claim for purposes of a limitation action." S&E Shipping Corp. v. Chesapeake & Ohio. Ry. Co., 678 F.2d 636, 645 (6th Cir. 1982). Accord Universal Towing Co. v. Barrale, 595 F.2d 414, 419 (8th Cir. 1979).

The majority view, however, is that "[a]s long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concursus*." Complaint of Dammers, 836 F.2d at 757 (2d Cir. 1988). Accord Gorman, 2 F.3d at 526-27; Odeco Oil & Gas Co. v. Bonnette, 74 F.3d 671, 675 (5th Cir. 1996); Beiswenger, 86 F.3d at 1042. As the Third Circuit explained in Gorman,

> [a] multiple claimant situation could arise, for example, if the plaintiffs seek to enforce a state court judgment against the shipowner up to the value of the limitation fund and then seek to recover the remaining amount of the judgment against the shipowner's co-defendants. If the defendants do not sign protective stipulations with the admiralty court, they would not be foreclosed from recovering against the shipowner for contribution, even though his or her liability (assuming a finding of no privity or knowledge) has already been exhausted. It is precisely this kind of competition for the limitation fund that the Act was designed to avoid.

2 F.3d at 527.

Further, nearly all courts agree that a multiple claimant situation exists where "a third party seeking indemnity or contribution also requests attorneys' fees and costs associated with its claim." Gorman, 2 F.3d at 525 (citing Complaint of Dammers, 836 F.2d at 756); see also S & E Shipping Corp, 678 F.2d at 646 & n.17; In re Mister Wayne, 729 F. Supp. 1124, 1127–28 (E.D. La. 1989). As the Sixth Circuit explained in S & E Shipping, the shipowner's obligation to indemnify a co-defendant for attorneys' fees is different from his obligation to indemnify the co-defendant for damages paid to the injured claimant. The latter is derivative of and limited to the amount that the injured claimant recovers from the co-defendant, whereas the former is not. See 678 F.2d at 646 n.17; see also Kattelman v. Otis Eng'g Corp., 696 F. Supp. 1111, 1116 (E.D. La. 1988).

As there does not appear to be any binding authority from the First Circuit on these issues, this Court will follow the majority view. The Court is not able to predict the outcome of the state-court action, and therefore the more conservative approach is to treat Chaparral and Volvo's indemnity and contribution claims as independent. Moreover, both Chaparral and Volvo have requested attorneys' fees in conjunction with their indemnification claims. These claims for attorney's fees, if nothing else, give rise to potentially competing claims for a $29,000 limitation fund. Accordingly, the Court finds that this is a multi-claimant case.

**B.  The proposed stipulations do not adequately preserve Mr. Urbelis' rights.**

In a single-claimant case, Ms. Berthiaume's proposed stipulations would certainly be sufficient to protect Mr. Urbelis' right to seek limitation of liability. Here, in contrast, Volvo and Chaparral also have claims against Mr. Urbelis, and their refusal to join in Ms. Berthiaume's stipulations undercuts the protective value of those promises.

First, while Ms. Berthiaume has agreed to waive any claim of res judicata pertaining to the issue of limitation of liability, Volvo and Chaparral have not. Thus, if Ms. Berthiaume were

to proceed with her claims in the state-court action, Volvo and Chaparral might later argue that the state-court judgment has preclusive effect in this Limitation of Liability action. Although the Court expresses no opinion as to the merits of that argument, it is nonetheless concerned about the potentially preclusive effect of a state-court judgment. See Lewis, 531 U.S. at 451-52 (holding that district court did not abuse its discretion in allowing state-court action to proceed, in part because the claimant waived any defense of res judicata). Because the claims against Mr. Urbelis far exceed the amount of the limitation fund, he has a right to litigate the limitation of liability issue in federal court. See id. at 449. If Volvo and Chaparral, however, refuse to stipulate that a state-court judgment will have no preclusive effect on a subsequent limitation proceeding in federal court, the Court cannot be sure that Mr. Urbelis' rights will be adequately protected in the event the state-court action goes forward. This alone would be sufficient grounds to deny Ms. Berthiaume's Motion.

Further, the although the stipulations proposed by Ms. Berthiaume may be able to shield Mr. Urbelis from Volvo and Chaparral's claims for contribution and indemnification, they cannot shield him from Volvo and Chaparral's requests for attorneys' fees.

As an example: If the Court were to grant Ms. Berthiaume's Motion to Stay and allow the state-court action to proceed, Ms. Berthiaume could potentially recover a judgment against Mr. Urbelis, Chaparral, and Volvo, jointly and severally, in the amount of $3,000,000. It is also possible that Chaparral and Volvo could recover on their claims for indemnification against Mr. Urbelis, and that any such judgment would include Volvo and Chaparral's attorney's fees and costs.[5] The Court assumes, for purposes of this hypothetical, that Volvo and Chaparral are each awarded $50,000 in attorneys' fees.

---

[5] The legal basis for Chaparral and Volvo's indemnification claims is not entirely clear. Generally, an obligation to indemnify can arise through operation of the common law, or through

In Massachusetts, liability among tortfeasors is joint and several. See Shantigar Found. v. Bear Mountain Builders, 441 Mass. 131, 141 (2004). Thus, Ms. Berthiaume could theoretically recover the entire $3,000,000 judgment from Chaparral, or Volvo, or some combination of the two. But if either Chaparral or Volvo paid more than its $1 million *pro rata* share of the $3,000,000 judgment, it would be entitled to seek contribution from the other defendants (including Mr. Urbelis) for the excess amounts. See Mass. Gen. Laws c. 231B, § 1; Shantigar, 441 Mass. at 141. Mr. Urbelis could thus be exposed to liability in excess of the limitation fund.

Similarly, if Volvo and Chaparral prevailed on their claims for indemnification from Mr. Urbelis, he would be obligated to indemnify Volvo and Chaparral for any amounts that Ms. Berthiaume might collect from them. This, too, could expose Mr. Urbelis to liability in excess of the limitation fund.

In an attempt to solve this problem, Ms. Berthiaume proposes to stipulate that if she obtains a judgment in state court against Mr. Urbelis and/or other third parties who may cross-claim or claim against Urbelis, and the amount of that judgment is in excess of the value of the limitation fund, "in no event will Berthiaume seek to enforce said judgment(s) insofar as same may expose Urbelis to liability in excess of the limitation fund." See Proposed Stipulation No. 5. The Court interprets this to mean that Ms. Berthiaume will not seek to enforce a judgment against third parties such as Volvo and Chaparral, to the extent that such enforcement would expose Urbelis to liability for contribution or indemnification in excess of the $29,000 limitation fund.

---

private contract. Here, however, neither Volvo nor Chaparral alleges any basis for contractual indemnity. Nor have they explained why Mr. Urbelis would be obligated to indemnify them based on common-law principles. Nonetheless, because no party has argued that Chaparral and Volvo's claims for indemnification are baseless, the Court will assume that there is a possibility they could recover on such claims, and that any corresponding judgment would include reasonable attorneys' fees. See Elias v. Unisys Corp., 410 Mass. 479, 482 (1991).

The Court agrees that this stipulation would be sufficient to protect Mr. Urbelis from basic claims for indemnification and contribution, because (1) such claims would be derivative of amounts collected by Ms. Berthiaume; and (2) Ms. Berthiaume has complete control over the amount of the judgment she ultimately enforces against third-parties like Volvo and Chaparral. See Complaint of Dammers, 836 F.2d at 759 (finding that similar stipulation was sufficient to protect shipowner's rights).

Unfortunately, the same cannot be said of Volvo and Chaparral's awards of attorney's fees, because Volvo and Chaparral would be entitled to collect those fees from Mr. Urbelis, regardless of whether Ms. Berthiaume enforces any portion of her judgment. See In re Kirby Inland Marine, L.P., 237 F. Supp. 2d 753, 755-56 (S.D. Tex. 2002). Further, the $100,000 in attorney's fees would far exceed the value of the $29,000 limitation fund. Consequently, Ms. Berthiaume's stipulation would not protect Mr. Urbelis from potential liability in excess of the fund.

In some cases, courts have allowed state-court actions to proceed, despite third-parties' claims for attorney's fees, if the injured party also stipulates that any such claim for attorneys' fees will take priority over her own claims. See Complaint of Dammers, 836 F.2d at 756; In re Mister Wayne, 729 F. Supp. at 1127-28. In other words, the third parties' attorneys' fees would be paid first, to ensure that the limitation fund would not be exhausted. Here, however, Ms. Berthiaume has not offered any such stipulation. See Kattleman, 696 F. Supp. at 1116 (denying motion to stay limitation proceeding, where claimants did not stipulate that third parties' claims for attorney's fees would take priority over their own claims). Moreover, because the limitation fund is only $29,000, it is not likely that such a stipulation could adequately protect Mr. Urbelis'

13

rights, even assuming Ms. Berthiaume offered one. Even a modest award of attorney's fees could easily exceed the fund in this case.

In sum, the Court cannot dissolve the stay on the current record, because it is not satisfied that it can allow the state-court action to proceed, while simultaneously preserving Mr. Urbelis' rights (1) to litigate the limitation issue in federal court, and (2) to be free from liability in excess of the limitation fund. See In re Holly Marine Towing, Inc., 8 F. App'x 565, 567 (7th Cir. 2001) (declining to lift stay of state-court action, where third party refused to join plaintiffs' stipulations not to invoke res judicata, and not to expose shipowner to liability in excess of limitation fund).

Although the Court cannot grant Ms. Berthiaume's Motion, it intends to proceed as expeditiously as possible in this action, and with the least possible impact on Ms. Berthiaume's rights. Accordingly, the Court is open to the possibility of bifurcating this proceeding, such that the limitation of liability issue will be decided first. If the Court ultimately determines that Mr. Urbelis is not entitled to exoneration from or limitation of liability under the Act, Ms. Berthiaume would have the option of returning to state court to try any remaining issues to a jury. See Aponte v. Caribbean Petroleum Corp., 141 F. Supp. 3d 166, 175 (D.P.R. 2015) (noting that the bifurcation approach is "common among courts as a way to ease the conflict between the saving to suitors clause and the [Limitation of Liability] Act"). The parties should come prepared to discuss such issues at the next Scheduling Conference before the Court, which is set for September 20, 2016, at 2:00 p.m.. The parties should confer prior to the Conference regarding a proposed scheduling order, and they are encouraged to submit a joint proposal in advance of the Conference.

In addition, the Court is open to considering Ms. Berthiaume's alternative request to partially dissolve its prior Stay Order, for the sole purpose of allowing Ms. Berthiaume to amend her state-court complaint to add Volvo and Chaparral as defendants within the applicable statute of limitations. The parties should be prepared to discuss this issue at the upcoming the Scheduling Conference.

## III.    CONCLUSION

For the foregoing reasons, Ms. Berthiaume's Motion to Stay [ECF No. 27] is <u>DENIED</u>.[6]

**SO ORDERED.**

Dated: August 31, 2016                                        /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE

---

[6] In light of this ruling, Volvo Penta of the Americas, LLC's Motion for This Court to Try All Issues of Fact and Law Arising Out of the Injury Accident [sic] of Nicole Berthiaume [ECF No. 44] is <u>DENIED AS MOOT</u>. There is no question that the Court has jurisdiction over this maritime action. But it is equally clear that the Court has the discretion to stay this action in favor of a state-court proceeding, and defer to the injured claimant's choice of forum, if it can ensure that the shipowner's rights are adequately protected. <u>See</u> <u>Lewis</u>, 531 U.S. at 454. In light of <u>Lewis</u>, most of Volvo's arguments are inapposite.