UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BENJAMIN P. URBELIS FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY, CIVIL AND MARITIME | * * * * * * * * * |

Civil Action No. 15-cv-12358-ADB

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

In this maritime action, Petitioner Benjamin P. Urbelis seeks exoneration from or limitation of liability in connection with an accident that occurred during a recreational outing on his power boat, the M/V NAUT GUILTY (the "Vessel"). Currently before the Court are a number of motions concerning whether non-party Alexander Williams, a passenger on the Vessel during the accident, should be involved in this action and in what capacity. Williams failed to file a claim for losses or damages before the September 25, 2015 deadline, and a default judgment entered against him. [ECF No. 49]. On July 21, 2017, the Court denied Williams' motion for leave to file a late claim. [ECF No. 111]. The now pending motions include: (1) Williams' motion for reconsideration of the denial of his motion for leave [ECF No. 128]; (2) claimant Chaparral Boats, Inc.'s ("Chaparral") motion for leave to file a third-party complaint against Williams [ECF No. 124]; and (3) claimant Volvo Penta of the Americas, LLC's ("Volvo") motion for leave to file a third-party complaint against Williams. [ECF No. 130]. For the following reasons, Williams' motion for reconsideration is <u>DENIED</u> and Chaparral's and Volvo's respective motions for leave to file a third-party complaint against Williams are <u>GRANTED</u>.

I.     BACKGROUND

On May 30, 2015, Urbelis and a number of other guests, including claimant Nicole Berthiaume and Williams, boarded the Vessel for a recreational outing on the Boston Harbor. [ECF Nos. 1 at 1; 63 at 1]. While the Vessel was anchored off of Spectacle Island, several of the people on the Vessel, including Berthiaume, jumped off of the Vessel to swim. Subsequently, someone aboard the Vessel started the engines. [ECF No. 63 at 1]. As Berthiaume attempted to swim back to the boat, she was injured by the engine's moving propellers. Id. Her injuries included, among other things, the loss of her dominant right arm below the shoulder, and other serious lacerations. Id.

On June 17, 2015, Urbelis filed this action seeking exoneration from or limitation of liability for any damages or injuries resulting from the accident pursuant to 46 U.S.C. § 30501 *et seq.*, commonly known as the Limitation of Liability Act ("LOLA"). [ECF No. 1]. A court-appointed appraiser determined that the Vessel's fair market value was $29,000, and the value of its pending freight was $0.00. [ECF No. 12]. On August 10, 2015, the Court ordered the issuance of notice to all potential claimants that they must file any claims by September 25, 2015 or be defaulted. [ECF No. 16]. The Court also enjoined all other lawsuits, actions, or proceedings against Urbelis pending the resolution of the LOLA action, including the civil action that was filed by Berthiaume against Urbelis, Williams, and other defendants in the Massachusetts Superior Court (the "State Court Action"). [ECF No. 53-1].

Only Berthiaume, Chaparral, and Volvo filed timely claims and answers to the Complaint. [ECF Nos. 20, 22, 23]. Berthiaume claims $25,000,000 in damages and challenges Urbelis' right to limitation. [ECF No. 22 at 7−8]. Chaparral (the manufacturer of the Vessel) and Volvo (the manufacturer of the Vessel's engines that were in use at the time of the accident) both

seek indemnification and/or contribution, from Urbelis or others, in the event that a judgment is rendered against them. [ECF No. 63 at 4].

On October 8, 2015, a default judgment entered against all persons that had not filed timely claims. [ECF Nos. 42, 49]. Almost one year later, on September 19, 2016, Williams filed a motion for leave to file a late claim for contribution and indemnity. [ECF No. 72]. The motion noted that Williams had been named as a defendant in the State Court Action and identified as being involved in the operation of the Vessel during the outing on the Boston Harbor. [ECF No. 72 at 1]. Williams claimed that his filing was late because his civil defense counsel had been "appointed . . . by the underwriter for the [V]essel," and that granting leave would not in any way prejudice the other parties. [ECF No. 72 at 1−5]. As further described below, the Court held that Williams did not adequately explain his failure to timely file a claim and denied the motion. [ECF No. 111].

During the pendency of Williams' motion for leave to file a late claim, on February 23, 2017, Berthiaume filed a motion for leave to amend her claim and answer to assert crossclaims against Williams, Chaparral, and Volvo. [ECF No. 96]. On July 21, 2017, the Court granted Berthiaume's motion with respect to asserting crossclaims against Chaparral and Volvo but denied the motion with respect to Williams, because he was not a party given the denial of his motion for leave to file a late claim. [ECF No. 112]. Berthiaume's amended pleading included crossclaims against Chaparral and Volvo for negligence, breach of the implied warranty of merchantability, and products liability. [ECF No. 118 at 7–20].

## II.   DISCUSSION

The issue of whether Williams should participate in this action, and in what capacity, has been raised on multiple occasions in this case. The claimants have consistently maintained that

3

Williams should be involved in this litigation in one way or another. Urbelis agrees that Williams may be liable for damages resulting from the boating accident at issue but his position has wavered as to how Williams should be involved in this action. At a scheduling conference held on September 20, 2016, where counsel for Chaparral stated that if Williams were not brought into the case, Chaparral "would probably seek leave to implead him, because he is obviously a critical part of this whole puzzle," [ECF No. 85 at 8:5-9], counsel for Urbelis acknowledged that Williams is likely "substantially liable for the incident" and "there [would be] no prejudice" if he were allowed to file a late claim. Id. at 9:7-14.[1] Moreover, when counsel for Berthiaume said that, "assuming Berthiaume asserts crossclaims against [Volvo] and Chaparral and Williams as part of this case, [he] foresee[s] this as a case in which at the end the Court would try the fault issues on those crossclaims as well and the only thing bifurcated to go back to State Court for a jury trial[,] if [Berthiaume] prevails here[,] would be damages," counsel for Urbelis (and Volvo) expressed agreement. Id. at 28:17-22, 29:9-12.

Following the denial of Williams' motion for leave to file a late claim, and the allowance of crossclaims against Chaparral and Volvo, at a status conference on July 25, 2017, counsel for Chaparral and Volvo agreed in essence that "one way or another, [Williams] needs to be in this case." [ECF No. 122 at 32:19-33:13]. Counsel for Berthiaume did not object to Williams' involvement as an impleaded third party, but counsel for Urbelis indicated that he would oppose a motion to implead Williams because he did not want Williams in the case since a default judgment had already been entered against him. Id. at 34:2-13; 36:2-18. Counsel for Williams suggested that he would file for reconsideration, which he did on September 15, 2017. Id. at

---

[1] Urbelis, nonetheless, ultimately filed an opposition to Williams' motion, alleging, inter alia, that the parties may be prejudiced by Williams' late entry because his claims are meritless and may "further complicate and frustrate the proceedings before the Court." [ECF No. 76 at 11].

4

37:1-6; [ECF No. 128]. The fact that Williams is not currently a party to this litigation despite the universal acknowledgment that he may bear some responsibility has led to the filing of the motions currently pending before the Court.

    A.    **Williams' Motion for Reconsideration**

Williams seeks reconsideration of the Court's order denying his motion for leave to file a late claim. Although he does not clearly identify the basis for his motion, and "[t]he Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration," such motions are usually decided pursuant to either Fed. R. Civ. P. 59(e)[2] or Fed. R. Civ. P. 60(b).[3] Central Produce El Jibarito v. Luna Commercial Corp., 880 F. Supp. 2d 282, 284 (D.P.R. 2012) (citation omitted). A motion is generally treated as filed pursuant to Rule 59(e) or Rule 60(b) based upon its filing date. Id. at 285 (citing Perez–Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993)). "If a motion is served within [28] days of the rendition of judgment, the motion will ordinarily fall under Rule 59(e)." Id. Here, Williams' motion for leave to file a late claim was denied on July 21, 2017. [ECF No. 111]. Even assuming, *arguendo*, that the order on the motion for leave to file a late claim constituted a judgment, Williams filed the motion for reconsideration on September 15, 2017, almost one

---

[2] Fed. R. Civ. P. 59(e) states, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

[3] Fed. R. Civ. P. 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; . . . or (6) any other reason that justifies relief."

month after the expiration of the 28-day period. Rule 60(b) therefore applies, although the resolution of the motion would be the same under either rule.[4]

"The Court has 'substantial discretion and broad authority to grant or deny' a motion for reconsideration made pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 57 (D. Mass. 2011) (quoting Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81 (1st Cir. 2008)). As grounds for reconsideration, Williams argues newly discovered evidence, a manifest error of law, and the clear unjustness resulting from the Court's order denying him leave to file a late claim. See Ruiz Rivera, 521 F.3d at 81−82 (quoting Kansky v. Coca-Cola Bottling Co. of New England, 492 F.3d 54, 60 (1st Cir. 2007)) ("A court may appropriately grant a motion for reconsideration 'where the movant shows a manifest error of law or newly discovered evidence.'"); Savini v. Ashland, Inc., No. 11−12277, 2013 WL 5218194, at *1 (D. Mass. Sept. 16, 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)) ("motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.").

Williams presents the following arguments under the guise of newly discovered

---

[4] Williams framed his motion for reconsideration under Fed. R. Civ. P. 54(b), which provides in pertinent part that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Given that Williams' motion for leave to file a late claim essentially sought to set aside a default judgment against him, Rule 60(b) is the appropriate standard by which to review his motion for reconsideration. See United States v. $23,000 in U.S. Currency, 356 F.3d 157, 164 (1st Cir. 2004) ("court can set aside a final judgment by default only in accordance with Rule 60(b)" (internal quotation marks omitted)). Williams also acknowledges that, even assuming he could seek reconsideration under Rule 54(b), the principles of Rule 59(e) and Rule 60(b) would guide the analysis. [ECF No. 129 at 3].

evidence: (1) that the pendency of his criminal case prevented his timely filing; (2) that he was not represented by civil defense counsel and his criminal defense counsel was unfamiliar with admiralty law; and (3) that he was "embroiled in a coverage dispute with [Urbelis'] insurer, seeking the appointment of civil counsel to defend him." [ECF No. 129 at 4]. "A court will deny a motion for reconsideration based on the 'new evidence' exception if that evidence 'in the exercise of due diligence[] could have been presented earlier.'" Allen, 573 F.3d at 53 (quoting Emmanuel v. Int'l Bd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005)); see FDIC v. World University, Inc., 978 F.2d 10, 16 (1st Cir. 1992) (quoting Harley-Davidson Motor Co., Inc. v. Bank of New England, 897 F.2d 611, 616 (1st Cir. 1990)) ("parties should not use [motions for reconsideration] to 'raise arguments which could, and should, have been made before judgment issued.'"). Williams fails to offer any explanation as to why these purportedly new arguments could not have been raised at the time of his motion for leave, other than the conclusory statements that "[t]his information came to light after [Williams'] criminal case concluded" and that his counsel has "now learned of the attempts to obtain coverage for defense counsel for Mr. Williams." [ECF Nos. 129 at 4, 129-1 at ¶ 5]; see Rodriguez-Lopez v. Velasco-Gonzalez, No. 08–1212, 2010 WL 830924, at *1 (D.P.R. Mar. 4, 2010) (motion for reconsideration denied where "Defendants have failed to make any assertion that such evidence was not available to them" at the time of their motion). With regard to his criminal case, Williams cannot reasonably contend that throughout the approximate year between the notice of the LOLA action and the filing of his motion for leave that he was not aware of his own criminal trial, especially considering that his motion for leave referenced his criminal case. [ECF No. 72 at 3] ("[T]he criminal cases involving Mr. Urbelis and Mr. Williams, upon information and belief, are currently scheduled for trial in December, 2016."). Further, the motion for leave

7

highlighted the fact that his civil defense counsel, who was appointed by the underwriter for the Vessel, was familiar with LOLA actions. Williams has no basis for claiming that he and his counsel could not also have timely raised Williams' prior lack of representation, the dispute regarding the appointment of counsel, or the inexperience of his criminal defense attorney. Basic facts about Williams' representation and legal situation during the relevant time period cannot reasonably be considered "newly discovered" or "evidence." Accordingly, reconsideration is not warranted on the grounds of newly discovered evidence, as all of Williams' arguments could, and should, have been raised at the time of his motion for leave.

Williams next argues that the Court committed a manifest error of law by applying a higher standard of review than was required under Rule F(4) of the Supplemental Rules of Admiralty concerning the extension of time allowed to file claims. [ECF No. 129 at 5]. In particular, he claims that the Court misinterpreted Rule F(4) by "requiring a specific evidentiary showing and supporting affidavit, rather than merely 'cause.'" Id. District courts applying Rule F(4) have discretion "to allow or refuse late claims," Golnoy Barge Co., M/T Shinoussa, 980 F.2d 349, 351 (5th Cir. 1993), and "[f]or cause shown, . . . may enlarge the time within which claims may be filed." Supplemental Admiralty and Maritime Claims Rule F(4). Generally, "'so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims . . .' upon a showing of the reasons therefor." Texas Gulf Sulphur Co. v. Blue Stack Towing Co., 313 F.2d 359, 362 (5th Cir. 1963) (quoting 3 Benedict, Admiralty § 518, p. 542 (Knauth ed. 1940)). In considering a party's request to file a late claim, a district court considers: "(1) whether the proceeding is 'pending and undetermined,' (2) whether the rights of the parties will be 'adversely affected,' and (3) the party's reasons for the delay." Aponte v. Caribbean Petroleum Corp., 4

8

F.Supp. 3d 354, 356 (D.P.R. 2014) (quoting Texas Gulf Sulphur Co., 313 F.2d at 362).

Still, "relief from a tardy claim is not a matter of right. It depends upon an equitable showing." Texas Gulf Sulphur Co., 313 F. 2d at 363; see In re River City Towing Services, Inc., 420 F.3d 385, 387–88 (5th Cir. 2005) (where a plaintiff has "failed to show any reason for the lateness of the additional claims," it is not necessary to address whether the rights of the current parties would be affected); In re Hartwig, No. 06−1232, 2007 WL 2209235, at *3 (M.D. Fl. July 30, 2007) (noting that in River City Towing, "plaintiff failed to offer any evidence to support their reasons for filing of a late claim" (emphasis in original)); In re Complaint of Kirby Inland Marine, L.P., 365 F. Supp. 2d 777, 782 (M.D. La. 2005) (late filed claims disallowed because putative claimants "failed to set forth specific, credible, and sufficient reasons why the claims were sought to be filed late").

Here, the Court did not deny Williams' motion because he failed to file a supporting affidavit or provide evidence. His motion was denied because he failed to articulate any reason for his failure to meet the filing deadline or for the length of time that elapsed before he sought leave to file a late claim. His motion claimed that "leave is sought because [civil] defense counsel has now been appointed for Williams by the underwriter for the vessel. The undersigned counsel, who has recently received the file from the underwriter, is familiar with these types of proceedings and seeks leave to enter the case and preserve [Williams' claims] for Contribution and Indemnity." [ECF No. 72 at 1]. As the Court explained in its order:

> This does not sufficiently explain why Williams failed to file claims by the deadline. For example, it is not clear when this counsel was retained and he does not discuss any issues involving previous counsel. Nor does he argue that he himself was unaware of the deadline or that anything prohibited him from filing timely claims. Further, [Urbelis] has submitted exhibits indicating that Williams did receive timely notice of the case, . . . which Williams does not dispute.

[ECF No. 111]. At best, Williams provided some explanation for the timing of his motion which correlated with the appointment of his new counsel. There was no effort to explain Williams' circumstances at the time that notice of the LOLA action was issued or received, or at the time of the deadline to file a claim. Nor did he attempt to clarify the events or circumstances, during the nearly twelve months that passed between the filing deadline and his attempt to submit a late claim, that might have affected his ability to file a claim or to make a more timely request for leave to do so. The mere fact that he ultimately retained more experienced counsel does not itself shed light on the relevant time period which was prior to the filing of his motion. In sum, his motion for leave wholly failed to provide any cause for the lateness of the filing or to provide the Court with any basis on which to grant the motion.[5]

Finally, Williams asserts that disallowing his late claim is unjust, because he cannot "challenge limitation and make claims for contribution and indemnity," or "present a defense to liability in this limitation proceeding." [ECF No. 129 at 11]. As explained below, Williams will be impleaded into this case as a third-party defendant and will therefore have the opportunity to defend against an assertion of liability. He is precluded only from filing a claim. The purpose of the rules governing LOLA actions, which establish the procedure for providing notice to

---

[5] As the Court stated in its order denying leave, it need not reach whether Rule F(4) or Rule 60(b), or both, were applicable, because Williams' motion fails under either standard. The case law suggests that Rule F(4) essentially sets a standard of "excusable neglect," as does Rule 60(b)(1). See In re Holmberg, No. 08−656, 2009 WL 1520027, at *8 (M.D. Fla. May 28, 2009) ("If [c]laimant is entitled to relief at all, either by way of Supplemental Rule F(4) or by way of Rule 60(b), she must demonstrate that the equities and circumstances in this case merit a finding of such excusable neglect as to warrant the court's vacating its prior order and permitting the case to be reopened."); In re Columbia Leasing LLC, 981 F. Supp. 2d 490, 495 (E.D. Va. 2013) (quoting Petition of World Tradeways Shipping, Ltd., 1967 A.M.C. 381, 381 (S.D.N.Y. 1966)) (Rule F(4) may be satisfied upon a showing "that no party will be prejudiced by permitting an extension, even with a weak showing of excusable neglect"); In re Complaint of American River Transportation Co., No. 11−523, 2016 WL 1615677, at *2 (E.D. Mo. Apr. 22, 2016) (same).

potential claimants, is to "protect the vessel owner from additional, late filed claims, and . . . also protect the claimants who have filed claims in a timely fashion." 8-VIII Benedict on Admiralty, § 8.01. Where Williams waited almost one year after the entry of a default judgment to seek relief, and then failed to show cause to allow his late filing, no unfairness has or will result from allowing the Court's order to stand. Accordingly, the motion for reconsideration is <u>DENIED</u>.

**B.      Chaparral's and Volvo's Motions for Leave to File Third-Party Complaints**

Chaparral and Volvo seek leave to file third-party complaints against Williams pursuant to Fed. R. Civ. P. 14(c), asserting claims for (1) indemnity and contribution in the event that the Court enters judgment for Berthiaume, (2) a declaratory judgment that their products were not defective or otherwise the cause of harm, and (3) a judgment in favor of Berthiaume pursuant to Fed. R. Civ. P. 14(c)(2). [ECF Nos. 125-1 at 3–6, 130-1 at 4]. Urbelis argues that the Court should not have allowed Berthiaume to file crossclaims in the first place, because as the injured party, she is not "on the same side of the main litigation" as Chaparral and Volvo, and therefore not in the appropriate posture to assert crossclaims.[6] [ECF No. 133 at 3]. He also argues that

---

[6] Urbelis' first argument improperly seeks reconsideration of the Court's order granting Berthiaume leave to file crossclaims against Chaparral and Volvo, which Urbelis initially did not oppose. [ECF No. 98 at 7]. Even assuming that this argument was properly asserted, crossclaims by and between claimants in a LOLA action are permissible. A LOLA action "is not unlike civil interpleader to the extent that both actions usually involve a number of claimants seeking enjoyment of a res possessed by the petitioner. And, similarly to interpleader, it is well-settled that a co-party claimant in a limitation action has the right to cross-claim against other co-claimants to the res." <u>Oldham v. Pritchett</u>, 599 F.2d 274, 280 (8th Cir. 1979); see <u>British Transport Comm'n v. United States</u>, 354 U.S. 129, 143 (1957) ("We conclude that . . . the manifest advantages of this cross-claim procedure serve the best interests of all of the parties before a court of the United States who find themselves the unfortunate victims of maritime disaster."). There may be differences between Berthiaume's and the other claimants' interests, but the policies underlying the LOLA would not be served by disallowing related crossclaims on such technicalities. "The question is not what 'tag' we put on the proceeding . . . or whether the pleading is of an offensive or defensive nature, but rather whether the Court has jurisdiction of the subject matter and of the parties." <u>British Transport</u>, 354 U.S. at 137; see <u>Ashland Oil, Inc. v. Third Nat'l Bank of Ashland, Ky.</u>, 557 F. Supp. 862, 872 (E.D. Ky. 1983) (quoting <u>British Transport</u>, 354 U.S. at 139)) (principles of "thrift, reason and fairness" led the <u>British Transport</u>

Chaparral and Volvo, as claimants in the LOLA action, are technically not defendants, and therefore are not permitted under Fed. R. Civ. P. 14(c) to implead third parties. See Fed. R. Civ. P. 14(c) (allowing "the defendant" to implead third parties). According to Urbelis, only the petitioner in a LOLA action may implead third parties.

Urbelis' second argument relies on an exceedingly narrow interpretation of Rule 14(c) that ignores the liberal joinder policies applicable to admiralty proceedings. "One of the prominent aspects of admiralty procedure has been liberal third-party practice." Charles Alan Wright & Arthur R. Miller, 6 Federal Practice and Procedure, § 1465 (3d ed.). "[L]iberal rules of joinder are [also] applied in limitation proceeding[s], allowing the court to adjudicate the claims and cross-claims of all interests." Schoenbaum, 2 Admiralty & Mar. Law, § 15-5 (5th ed.); see In re McAninch, 392 F. Supp. 96, 97 (S.D. Tex. 1975) ("To utilize Rule 14(c) in the limitation proceedings following a maritime disaster will certainly expedite matters by getting all the parties concerned involved in a single proceeding" and is "a very common-sense approach"). In a limitation action:

> the parties who seek money (claimants) are defendants. The party who seeks to avoid paying that money, normally the defendant, is in these cases the plaintiff. The plaintiff vessel owner, or the defendants, may pursue third party practice under Rule 14. And, if a third party defendant is joined under Rule 14(c), the joinder may include a demand that the third party defendant defend not only as to the third party complaint, but also as to the plaintiff's complaint as well.

3-II Benedict on Admiralty § 18. Moreover, "in a situation in which there are claims against non-vessel owners, which arise out of the same accident or casualty that gives rise to the limitation action, the non-vessel owners should be able to join the parties who are potential (or actual) plaintiffs against them as third party defendants in the limitation action under Rule 14(c)." Id.;

---

Court "to eschew tying admiralty practice 'to the mast of legal technicalities'"). Accordingly, Urbelis has no basis for challenging the order granting leave for Berthiaume to file crossclaims against Chaparral and Volvo.

see also Charles Alan Wright & Arthur R. Miller, 6 Federal Practice and Procedure, § 1465 (3d ed.) ("The language of Rule 14(c) also permits a claimant—for example, a claimant in an action in rem in which the owner of a vessel is defending his property—to become a third-party plaintiff."). In this LOLA action, Chaparral and Volvo are claimant defendants and may therefore implead third parties in accordance with Rule 14(c).

Further, allowing Chaparral and Volvo to implead Williams also comports with the purposes of Rule 14(c)'s "unique liberal joinder policy." Aponte v. Caribbean Petroleum Corp., 141 F. Supp. 3d 166, 170 (D.P.R. 2015) (quoting Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co., 243 F.3d 906, 910 (5th Cir. 2001)). "The most efficient way to determine which parties are liable . . . , and the best way to avoid inconsistent liability findings through piecemeal litigation, is to bring all potentially liable parties into a single action." Id.; see British Transport, 354 U.S. at 138 ("Logic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner."). It is particularly sensible to allow impleader by the claimants where, as here, Urbelis acknowledges that he lacks an incentive to implead Williams, even though he agrees that Williams may be liable. Urbelis appears to prefer excluding Williams from this action because a default judgment has entered against him with respect to his ability to file a claim. Impleading Williams, however, will not negate the default judgment. The default judgment applies only to Williams' ability to file a claim and does not preclude him from presenting a defense to liability as an impleaded party. See In re S&W Marine, Inc., No. 16–17645, 2017 WL 2955358, at *2 (E.D. La. Mar. 6, 2017) (defaulted parties were "enjoined from entering a claim against [petitioner]"); In re Narod, No. 13–554, 2013 WL 3491088, at *3 (E.D.N.Y. July 10, 2013) (quoting In re X−Treme Parasail, Inc., No. 10−711, 2011 WL 4572448,

at *1 (D. Haw. Sept. 12, 2011)) (in LOLA action, default judgment will enter against any potential claimant who has failed to timely respond to the public notice stating that "a consequence of failing to file a timely claim and/or answer was default and being forever barred from filing a claim and/or answer"). Accordingly, the Court grants Chaparral and Volvo leave to implead Williams. Given that Berthiaume's initial motion to assert crossclaims against Williams was denied because he was not a party, Berthiaume may also seek leave to file a third-party complaint (or crossclaims) against Williams, if he is impleaded.[7]

## III. CONCLUSION

For the reasons stated herein, Williams' motion for reconsideration [ECF No. 128] is <u>DENIED</u>; Chaparral's motion for leave to file a third-party complaint [ECF No. 124] is <u>GRANTED</u>; and Volvo's motion for leave to file a third-party complaint [ECF No. 130] is <u>GRANTED</u>.

**SO ORDERED.**

---

[7] Although Urbelis does not raise this issue, the Court notes that while Rule 14(c) enables Chaparral and Volvo to file third-party complaints as claimants/defendants, Chaparral and Volvo framed their motions specifically as crossclaim defendants seeking, in part, to tender Williams to Berthiaume as the crossclaim plaintiff. Rule 14(c) applies where the "plaintiff asserts an admiralty or maritime claim under Rule 9(h)." Fed. R. Civ. P. 14(c)(1). Unlike the general impleader rule, Rule 14(c)(2) enables a third-party plaintiff to "demand judgment in the plaintiff's favor against the third-party defendant" such that the third-party defendant "must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim." Fed. R. Civ. P. 14(c)(2). To the extent that Chaparral and Volvo intend to tender Williams to Berthiaume pursuant to Rule 14(c)(2), they should show that Berthiaume, as crossclaim plaintiff, "asserted an admiralty or maritime claim under Rule 9(h)." <u>Marmac, LLC v. Reed</u>, 232 F.R.D. 409, 412 (M.D. Fla. 2005) (third-party defendant "does not . . . challenge the general propriety of being impleaded in the course of a limitation action. Instead, [third-party defendant] asserts that impleader is not appropriate in this case under Rule 14(c) because the [c]laimants have not specifically asserted admiralty claims within the meaning of Rule 9(h)."). The Court grants leave to Chaparral and Volvo to file third-party complaints for the reasons stated above, but to the extent they seek to tender Williams to Berthiaume as the crossclaim plaintiff, their third-party complaints should demonstrate compliance with Fed. R. Civ. P. 14 (c)(1).

Dated: February 2, 2018                                    /s/ Allison D. Burroughs
                                                                                              ALLISON D. BURROUGHS
                                                                                              U.S. DISTRICT JUDGE